**PALMER FOUNDRY, INC., Plaintiff**

v.

**DELTA–HA, INC., et al, Defendants**

**No. CIV.A.02–30003–MAP.**

United States District Court,
D. Massachusetts.

May 19, 2004.

---

Christine K. Tramontana, Roy P. Giarrusso, Giarrusso, Norton, Cooley & McGlone, Qunicy, MA, Elliott R. Feldman, Miles A. Jellinek, William N. Clark, Jr., Cozen & O'Connor, Philadelphia, PA, for Plaintiff and Cross Claimant.

Steven K. Gerber, Cozen & O'Connor, Philadelphia, PA, for Plaintiff.

Christopher W. Costello, Mark B. Lavoie, Timothy J. van der Veen, McDonough, Hacking, Neumeier & Lavoie LLP, Boston, MA, for Defendant and Cross Defendant.

### ORDER RE: RULE 16 MOTION OF DEFENDANT DELTA–HA, INC.

#### (Docket No. 43)

PONSOR, District Judge.

On February 11, 2001 a catastrophic fire occurred at plaintiff's premises, allegedly caused by the improper handling and disposal of alkyd resin, a chemical manufactured by defendant Delta–HA, Inc.[1] Plaintiff alleges that defendant negligently failed to identify the resin as an "oxidizer" on the label, as required by a regulation promulgated by the Occupational Safety and Health Administration ("OSHA"). The defendant has responded that the resin was not an oxidizer and was correctly labeled merely as "flammable," pursuant to the applicable OSHA regulation.

The defendant's Rule 16 motion seeks a ruling from the court, following testimony of experts if necessary, to the effect that the alkyd resin manufactured by the defendant was not an oxidizer as a matter of law. Plaintiff has replied that the facts of record, fairly construed, support only one conclusion: that the resin in question was an oxidizer. Alternatively, plaintiff argues that disputed issues of fact make the question of whether the resin was an oxidizer a matter to be resolved by the jury.

The court heard argument on the defendant's Rule 16 motion on October 29, 2003 and took the question under advisement at that time. Recently, counsel for the plaintiff has noted that the parties have been engaging in tentative settlement discussions, but that these discussions are in abeyance pending a ruling from this court on the defendant's pending motion.

Having carefully considered the arguments offered by counsel and weighed the proffered expert testimony in this case, the court has concluded that this is a rare instance in which the doctrine of primary jurisdiction requires reference of the central issue to the appropriate administrative agency, in this case OSHA.

As the First Circuit has noted, "the primary jurisdiction doctrine permits and occasionally requires a court to stay its hand while allowing an agency to address issues within its ken." *United States Public Interest Research Group, et al. v. Atlantic Salmon of Maine, LLC*, 339 F.3d 23, 34 (1st Cir.2003), *citing Ass'n of Int'l Auto. Mfrs. v. Comm'r Mass. Dep't of Envt'l Prot.*, 196 F.3d 302, 304 (1st Cir. 1999) and 2 Pierce *Administrative Law Treatise* § 14–1 (4th ed.2002). Put another way, primary jurisdiction "is a doctrine specifically applicable to claims properly cognizable in court that contain some issue within the special competence of an admin-

---

1. Although Delta–HA, Inc. manufactured the alkyd resin, a separate entity, also a defendant in this case, supplied the resin to plaintiff.

istrative agency. It requires the court to enable a 'referral' to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling." *American Auto. v. Mass. Dept. of Environ. Protection,* 163 F.3d 74, 81 (1st Cir.1998), *quoting Reiter v. Cooper,* 507 U.S. 258, 268, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). "The primary jurisdiction doctrine is intended to 'serve as a means of coordinating administrative and judicial machinery' and to 'promote uniformity and take advantage of agencies' special expertise.'" *Pejepscot Indus. Park, Inc. v. Maine Cent. R. Co.,* 215 F.3d 195, 205 (1st Cir.2000), *quoting Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575, 580 (1st Cir.1979).

█ "No fixed formula exists for applying the doctrine of primary jurisdiction." *United States v. Western Pacific R.R. Co.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956). *See Atlantic Salmon,* 339 F.3d at 34; *Pejepscot Indus. Park,* 215 F.3d at 205; *American Auto.,* 163 F.3d at 81; *Comm. of Mass. v. Blackstone Valley Elec. Co.,* 67 F.3d 981, 992 (1st Cir. 1995). Nonetheless, the First Circuit "relies on three factors to guide the decision on whether to refer an issue to an agency under the primary jurisdiction doctrine: (1) whether the agency determination lies at the heart of the task assigned the agency by Congress; (2) whether agency expertise is required to unravel intricate, technical facts; and (3) whether, though perhaps not determinative, the agency determination would materially aid the court." *Pejepscot Indus. Park,* 215 F.3d at 205, *citing Blackstone Valley Elec. Co.,* 67 F.3d at 992. See *American Auto.,* 163 F.3d at 81. More generally, the First Circuit also considers the need for "national uniformity in the interpretation and application of a federal regulatory regime." *American Auto.,* 163 F.3d at 81, *citing*

*Western Pacific,* 352 U.S. at 64, 77 S.Ct. 161. *See Atlantic Salmon,* 339 F.3d at 34, *citing Pejepscot Indus. Park,* 215 F.3d at 205; *Blackstone Valley Elec. Co.,* 67 F.3d at 992. Finally, the decision to "refer" an issue to an administrative agency "must be balanced against the potential for delay." *American Auto.,* 163 F.3d at 81.

Following a determination that an issue should be resolved by an administrative agency pursuant to the doctrine of primary jurisdiction, the procedure for doing so is straightforward.

█ "Referral" is generally a misnomer because few statutes allow a court "to demand or request a determination from [an] agency; that is left to the adversary system." *Reiter,* 507 U.S. at 268 n. 3, 113 S.Ct. 1213. *See American Auto.,* 163 F.3d at 82. Instead, a court invokes the doctrine of primary jurisdiction by staying its proceedings to allow one of the parties to file an administrative complaint seeking resolution of a particular issue. *See Reiter,* 507 U.S. at 268 n. 3, 113 S.Ct. 1213, *citing Western Pacific,* 352 U.S. at 64, 77 S.Ct. 161; *Pejepscot Indus. Park,* 215 F.3d at 205; *American Auto.,* 163 F.3d at 82; *Blackstone Valley Elec. Co.,* 67 F.3d at 993.

In *American Auto.,* 163 F.3d 74, the First Circuit invoked the doctrine of primary jurisdiction and "referred" certain issues to EPA. Subsequently, in *Ass'n of Int'l Auto. Mfrs.,* 196 F.3d at 304, the First Circuit concluded that EPA's determination of those issues was appealable in its own right. The First Circuit acknowledged that a delay in resolution of the underlying dispute would be inevitable as EPA's determination was appealed to the Court of Appeals for the D.C. Circuit, but found this to be acceptable in deference to the general principle of judicial review of agency determinations. *Ass'n of Int'l Auto. Mfrs.,* 196 F.3d at 304–305. In so

doing, the First Circuit recognized that even though the "referring" court retains jurisdiction over all of the other issues in the dispute, the issue "referred" must be fully adjudicated:

> [T]he court will defer any decision in the action before it until the agency has addressed the issue that is within its primary jurisdiction. The court retains jurisdiction over the dispute itself and all other issues raised by the dispute until the agency has resolved the issue that is in its primary jurisdiction. ... [I]f the issues referred to the agency ... are critical to judicial resolution of the underlying dispute, the court cannot proceed with the trial of the case until the agency has resolved those issues. In many circumstances, the court that referred the issues to the agency also must wait until the agency's decision has been either upheld or set aside by a different reviewing court.

*Ass'n of Int'l Auto. Mfrs.*, 196 F.3d at 304, *quoting* 2 Davis & Pierce *Administrative Law Treatise* 271 (3d ed.1994).

█ With this background, the court must conclude that the doctrine of primary jurisdiction can and should be invoked in this case.

The central issue before the court is whether the alkyd resin, by way of its active ingredient linseed oil, was an "oxidizer" pursuant to OSHA regulations. The pertinent regulation, 29 C.F.R. § 1910.1200(c), defines an "oxidizer" as "a chemical ... that initiates or promotes combustion on other matters, thereby causing fire either of itself or through the release of oxygen or other gases." Whether the resin that allegedly caused the fire on February 11, 2001 is an "oxidizer" is a matter of first impression; no OSHA regu-

lation on its face provides clear guidance on this question, and plaintiff's and defendant's experts offer conflicting opinions.[2]

While this court has the power to make the determination, this highly technical question is better "referred" to OSHA pursuant to the doctrine of primary jurisdiction. OHSA is the federal agency specifically charged with regulating the handling of dangerous materials in the workplace. It has the primary responsibility for defining and classifying dangerous materials. It is most sensible, therefore, that OSHA should be allowed to do what is clearly within its "ken"—determine whether the resin is or is not an "oxidizer."

Equally importantly, the resin's active ingredient—linseed oil—is widely sold, distributed, and used. A ruling from this court as to the regulatory classification of a resin containing linseed oil could generate inconsistency and disrupt ongoing commercial practices. A determination by OSHA, on the other hand, would insure national uniformity.

In sum, all the factors identified by the First Circuit in its *Pejepscot* decision apply here: OSHA's determination is at the heart of the agency's assignment from Congress; the agency's particular expertise is required to unravel intricate technical facts, and the agency's determination will materially aid the court.

For the foregoing reasons, the defendant's Rule 16 motion is hereby DENIED, without prejudice. This case is hereby ordered stayed. The parties will make an appropriate administrative submission to OSHA, seeking resolution of the question whether the alkyd resin in this case constituted an oxidizer. A written report will be submitted to this court by counsel for all

---

**2.** Plaintiff's suggestion that disputed issues of fact require the court to allow the jury to determine whether the resin was an oxidizer is baseless. This preliminary question is for the court, either on its own or with the assistance of an agency determination.

parties on or before July 16, 2004, indicating the status for any such request for administrative action, as well as the status of settlement discussions, if any. Written reports will thereafter be submitted every ninety days, as needed, until agency action is completed. This court will retain jurisdiction over the case pending OSHA action.

It is So Ordered.